**IN THE COURT OF APPEALS OF IOWA**

No. 16-1061
Filed August 31, 2016

**IN THE INTEREST OF X.O.,**
**Minor child,**

**M.H., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Madison County, Kevin A. Parker,
District Associate Judge.


　　A father appeals the termination of his parental rights to his child.
**AFFIRMED.**


　　Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant
Attorney General, for appellee State.

　　Tabitha L. Turner of Turner Law Firm, P.L.L.C., Des Moines, guardian ad
litem for minor child.


　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child. He contends the State failed to prove the grounds for termination by clear and convincing evidence and termination is not in the child's best interests. Reviewing the record de novo, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we find the requirements for terminating the father's parental rights under Iowa Code section 232.116(1)(h) (2015) have been met and termination of the father's rights was in the child's best interests. Accordingly, we affirm.

**I. Background Facts and Proceedings.**

The child was born in 2013 and came to the juvenile court's attention in July 2014 due to concerns about the parents' history of substance abuse, the mother's mental health, and domestic abuse perpetrated by the mother against the father. The parents stipulated to the child's removal from the home and adjudication as a child in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2) (defining a CINA as a child who has suffered or is imminently likely to suffer harmful effects as a result of a parent's failure to exercise a reasonable degree of care in supervising the child) and (n) (defining a CINA as a child who is not receiving adequate care due to a parent's mental capacity or condition, imprisonment, or drug or alcohol abuse). The child was placed in family foster care.

The State filed a petition to terminate the mother's parental rights in July 2015. However, the social worker assigned to the family recommended the father be given six more months to show the child could be returned to his care. In a report to the court dated June 15, 2015, the worker noted that the child was

"very clearly bonded" to the father, running to and wanting to be held by the father at visits, and that the father had "been observed to be very attentive and appropriate with" the child. The worker opined, however, that at that time, the father could not provide the "stable, consistent, permanent home environment" the child needed and would be unable to do so as long as he remained married to the mother. The juvenile court followed the recommendations, terminating the mother's parental rights and granting the father an extension of time.

Unfortunately, the father did not make use of the additional time. In a report to the court dated February 5, 2016, the social worker noted she had "not met face to face with [the father] or had any phone calls or contact with him since the last court hearing." Because the father failed to attend the visits he was allowed with the child, the worker had not been able to observe the father interacting with the child for "a number of months." The worker recommended terminating the father's parental rights, stating:

> [The child] has not been in the care or custody of [the] father since [the child] was an infant. [The father] has available to him regular visits with [the child] but he has not been consistent or regular in attending those visits. At the last court hearing this worker recommended giving [the father] an extension as it was hoped that with [six] additional months he would be able to display that [the child] was his priority and he would attend every visit as scheduled, complete his substance abuse evaluation and address his substance abuse issues and show the court that he could provide the safe, consistent and secure environment that [the child] needs and deserves. [The father] has not been attending visits, his housing and employment are unknown due to lack of communication with [Family Safety, Risk, and Permanency service providers]. He has spent a number of days in jail for nonpayment of back child support for his other children. He is showing that he is not able to provide for the needs of his other children so there is no reason to think that he is able or willing to provide for the needs of [this child] at this time or in the future. [The child] needs and deserves a stable, consistent, permanent home environment which

[the father] is not able to provide . . . now or in the foreseeable future. [The child] is fortunate to be receiving all of this in [the] current placement. [The child] is doing very well in the [foster] home and they are able to meet all of [the child's] needs at this time which is providing [the child] with the stability and permanency [the child] needs and deserves.

The State filed a petition to terminate the father's parental rights, which came to a hearing in March 2016. In its June 2016 order, the court terminated the father's parental rights under Iowa Code section 232.116(1)(h). The father appeals.

## II. Statutory Grounds for Termination.

The father first challenges the evidence supporting termination under section 232.116(1)(h). Specifically, the father argues the State failed to prove the child could not be placed in his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4). He claims there is "no evidence" to support a finding that he has unresolved substance-abuse and domestic-violence issues or that he lacks stability.

Contrary to the father's assertions, there is clear and convincing evidence in the record showing the child cannot be placed in the father's care without risk of adjudicatory harm. In addition to the cited concerns regarding the father's substance abuse, the record shows the father remains in a relationship with the mother, who threatened her own safety and the safety of others, resulting in the CINA adjudication. The father married the mother after the CINA proceedings began, had another child with her, and remained married to her at the time of the termination hearing. During his testimony, the father admitted the child is not safe with the mother due to her mental health and claimed he would not allow the

child to see the mother. However, he also testified that he allowed the mother to care for their second child without concern for that child's safety. This contradiction indicates his testimony was disingenuous; he was only saying what he thought the court needed to hear to prevent termination of his parental rights.

The record also contradicts the father's claim that he is able to support the child. He was unemployed during the five months leading up to the termination hearing, and during that period, he served time in jail for failing to pay support for two other children. The father lost his driving privileges as a result of his failure to pay child support. Although he claimed he could provide a home for the child, the father relied on his grandmother to provide him with a place to live, just as he had relied on other relatives for periods of time; there is no stability in the father's housing.

Finally, the father admitted he had only visited the child twice in the months leading up to the termination hearing. His lack of involvement in the child's life impacted his ability to provide care for the child, as shown during the following exchange:

> Q. . . . [W]hat's the name of your [child]'s pediatrician? A. I don't know the name.
> Q. How about the dentist? A. No.
> Q. Day-care provider? A. No.
> Q. When was the last time you requested any medical records or dental records to check up on your [child]? A. I haven't requested them.
> Q. And you haven't been denied any access; correct? A. No.
> Q. Is [the child] on any medications? A. No.
> Q. What's [the child's] favorite book? A. I don't know that.
> . . . .
> Q. Does [the child] sleep with a teddy bear? A. I don't know.
> Q. Have you ever provided any food, money, clothing or anything for [the child] to the [foster family]? A. No.

. . . .

Q. . . . [I]n the last three and a half months, you've seen your [child] twice maybe— A. Yeah.

There is clear and convincing evidence showing the father cannot provide the necessary care for the child to keep the child safe from harm. Therefore, the State met its burden of proving the grounds for termination under section 232.116(1)(h) exist.

### III. Best Interests.

The father also argues termination is not in the child's best interests, claiming that severing his strong bond with his child will be detrimental to the child. We disagree. The child had been out of the father's care for almost two years at the time of the termination-of-parental-rights hearing. In the months leading up to that hearing, the father failed to attend any visits with the child. He lacked even the most basic knowledge parents have about their children.

In contrast, the record shows the child maintains a close bond with the pre-adoptive foster family and calls the foster parents "mom and dad." The child's therapist has concerns about the child developing attachment issues if the bond with the foster family was lost. Unlike the father, the foster family is able to meet the child's needs.

Because there is clear and convincing evidence showing the requirements for termination under section 232.116(1)(h) have been proved and termination of the father's parental rights is in the child's best interests, we affirm.

**AFFIRMED.**